# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**733**

**TP 13-02080**

PRESENT: SCUDDER, P.J., FAHEY, PERADOTTO, VALENTINO, AND DEJOSEPH, JJ.

---

IN THE MATTER OF BRENDA HARWOOD, PETITIONER,

V            MEMORANDUM AND ORDER

SHARON ADDISON, CITY MANAGER, CITY OF WATERTOWN,
RESPONDENT.

---

STEVEN CRAIN AND DAREN RYLEWITZ, CIVIL SERVICE EMPLOYEES ASSOCIATION,
INC., SYRACUSE (D. JEFFREY GOSCH OF COUNSEL), FOR PETITIONER.

SLYE & BURROWS, WATERTOWN (ROBERT J. SLYE OF COUNSEL), FOR RESPONDENT.

---

Proceeding pursuant to CPLR article 78 (transferred to the Appellate Division of the Supreme Court in the Fourth Judicial Department by order of the Supreme Court, Onondaga County [Donald A. Greenwood, J.], entered November 12, 2013) to review a determination of respondent. The determination terminated the employment of petitioner.

It is hereby ORDERED that the determination so appealed from is unanimously modified on the law and the petition is granted in part by annulling that part of the determination finding petitioner guilty of misconduct as alleged in charge 2, specification 2, and vacating the penalty of termination imposed, and as modified the determination is confirmed without costs and the matter is remitted to respondent for further proceedings in accordance with the following Memorandum: Petitioner commenced this CPLR article 78 proceeding seeking, inter alia, to annul the determination terminating her employment with the City of Watertown (City). Petitioner was charged with incompetence and misconduct in the performance of her duties as a senior account clerk typist in the City's Parks and Recreation Department (Department). Following a hearing pursuant to Civil Service Law § 75, the Hearing Officer sustained one of the three specifications of incompetence (charge 1, specification 3 - failure to deposit cash and checks in a timely manner), and one of the two specifications of misconduct (charge 2, specification 2 - willfully misleading the City's retained accountant). The Hearing Officer found that the remaining specifications at issue had "some basis in fact," but that "mitigating circumstances" precluded a finding of guilt. He further recommended that, instead of disciplining petitioner, the City place her on an employee improvement plan. Respondent adopted the Hearing Officer's determinations of guilt, and sustained an additional specification of incompetence (charge 1, specification 2 - failure to bill for services in a timely manner). Respondent terminated

petitioner's employment. We agree with petitioner that the determination of guilt on charge 2, specification 2, is not supported by substantial evidence, and we therefore modify the determination accordingly. We further agree with petitioner that, under the circumstances of this case, the penalty of termination is shocking to one's sense of fairness. We therefore further modify the determination accordingly, and we remit the matter to respondent for imposition of an appropriate penalty not to exceed a two-month period of suspension without pay, commencing February 5, 2013, "the maximum penalty supported by the record" (*Matter of Johnson v Town of Arcade*, 281 AD2d 894, 895).

Both the Hearing Officer and respondent found petitioner guilty of charge 2, specification 2 on the ground that she willfully misled the retained City accountant concerning the status of certain uncashed checks. The notice of charges and specifications, however, alleges that petitioner "purposely misled *the City Comptroller's office*," i.e., that petitioner was "specifically asked on May 13, 2011, by *[the] Accounting Supervisor of the City Comptroller's office*, whether you were then in possession of any . . . uncashed checks," that petitioner responded that she was not, and that petitioner "later acknowledged that there was such a check written by a member of the City of Watertown Council, and [she] later gave that individual's uncashed check to the City Comptroller's office" (emphasis added). That allegation is contradicted by respondent's own proof (*see generally Matter of Krossber v Jackson*, 263 AD2d 960, 961, *lv denied* 94 NY2d 756). The retained City accountant testified that, on May 13, 2011, she asked the accounting supervisor in the Comptroller's Office to call petitioner and ask her if she had returned the check in question. According to the accountant, petitioner replied that "she had not and she still had . . . the check." We thus conclude that the determination insofar as it found petitioner guilty of misconduct as alleged in charge 2, specification 2, is not supported by substantial evidence (*see generally Matter of Jordan v Daly*, 302 AD2d 862, 862).

We further conclude that the penalty of termination is " 'so disproportionate to the offense, in the light of all the circumstances, as to be shocking to one's sense of fairness' " (*Matter of Pell v Board of Educ. of Union Free Sch. Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222, 233; *see Johnson*, 281 AD2d at 895). "[A] result is shocking to one's sense of fairness if the sanction imposed is so grave in its impact on the individual subjected to it that it is disproportionate to the misconduct, incompetence, failure or turpitude of the individual, or to the harm or risk of harm to the agency or institution, or to the public generally" (*Pell*, 34 NY2d at 234; *see Matter of Kelly v Safir*, 96 NY2d 32, 38, *rearg denied* 96 NY2d 854). "Where, as here, there is no 'grave moral turpitude' and no 'grave injury to the agency involved or to the public weal,' courts may 'ameliorate harsh impositions of sanctions by administrative agencies . . . in order to accomplish what a sense of justice would dictate' " (*Matter of Grady v New York State Off. of Children & Family Servs.*, 39 AD3d 1157, 1158, quoting *Pell*, 34 NY2d at 235).

Having annulled the determination of guilt on charge 2, specification 2, we are left with two specifications of incompetence, i.e., failure to bill for services in a timely manner and failure to deposit cash and checks in a timely manner.  Respondent acknowledged that petitioner did not misuse or misappropriate any of the funds at issue, and there is no evidence that the City lost revenue or otherwise suffered financial harm as a result of petitioner's delay in processing invoices or preparing funds for deposit.  Moreover, the record establishes that there were several factors beyond petitioner's control that contributed to the delays.  It is undisputed that petitioner was expected to perform a multitude of non-financial duties that consumed a significant portion of her work day.  Petitioner was responsible for scheduling the use of the City's facilities, including its parks, fairgrounds, and numerous athletic fields.  Petitioner's scheduling duties were not specifically included in her job description, but took in excess of 50% of her time.  Petitioner was also tasked with responding to a large volume of in-person, phone, and email inquiries from the public, duties that likewise were not specifically included in her job description.

Notably, respondent acknowledges that there were no City or Departmental rules, regulations, or written policies with respect to the timing of invoices or deposits, and petitioner's direct supervisor testified that he never directed petitioner to send out invoices or prepare funds for deposit within a particular period of time.  Indeed, the supervisor testified that he established petitioner's priorities, that invoicing was not a priority in the Department, and that petitioner completed her tasks in accordance with his priorities.  As petitioner testified, the supervisor "gave [her] the duties that he wanted done for the day, and if invoices was one of them, then [she] would complete that.  But if invoices was not one of them, [she] completed whatever he gave [her] for duties for the day."  Although respondent emphasizes that there was a six-month period during which petitioner failed to prepare any invoices, the record reflects that petitioner was ill and intermittently absent from work during several of those months, that no one performed petitioner's duties during her absence, and that several of petitioner's completed invoices were inadvertently deleted by the City's informational technology department.

In our view, the penalty of termination is particularly unfair in light of petitioner's long service to the City and her previously unblemished work record.  Prior to the charges at issue, petitioner had worked for the City for 29 years and had never been disciplined, threatened with discipline, or counseled with respect to her job performance (*see Matter of Rice v Hilton Cent. Sch. Dist. Bd. of Educ.*, 245 AD2d 1104, 1105).  Petitioner's direct supervisor, who supervised her for most of her tenure with the City, testified that petitioner was a hard worker and that she did her best to complete all of her assigned duties.  According to the supervisor, petitioner stayed late without compensation "a couple of times a week at least," and her lunch break was interrupted or shortened on a daily basis due to the demands of the job.  Thus, as noted herein, we conclude that "the maximum penalty supported by the record" is a two-month period of

suspension without pay (*Johnson*, 281 AD2d at 894).

Finally, we have reviewed petitioner's remaining contentions and conclude that they are without merit.

Entered:  June 20, 2014                    Frances E. Cafarell
                                           Clerk of the Court